UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI AL-SADOON,

        Petitioner,                Case No. 1:21-cv-11438

v.                                       Honorable Thomas L. Ludington
                                            United States District Judge

REBECCA ADDUCCI, *et al.*,

        Respondents.
_____/

**ORDER DIRECTING SUPPLEMENTAL BRIEFING**

On June 18, 2021, Petitioner Ali Najim Al-Sadoon, detained by United States Immigration and Customs Enforcement ("ICE") at the St. Clair County Detention Facility in Port Huron, Michigan, filed a petition for writ of habeas corpus under 18 U.S.C. § 2241, seeking release during the pendency of his immigration appeal. ECF No. 1. Concurrent with his petition, he filed a motion for a preliminary injunction.[1] For the reasons explained hereafter, the parties will be directed to submit supplemental briefing regarding the statute that governs Petitioner's detention.

**I.**

**A.**

On June 23, 1994, Petitioner came to the United States with his Shi'ite parents as an eight-year-old boy. ECF Nos. 1 at PageID.6; 1-2 at PageID.30. Petitioner's family all became either

---

[1] The motion for a preliminary injunction is titled "Motion for Temporary Restraining Order" under Federal Rule of Civil Procedure 65. ECF No. 2. Despite its title, the motion seeks a preliminary injunction and, therefore, is not an ex-parte motion for a temporary restraining order. This Court will treat Petitioner's motion as one for a preliminary injunction. *Toma v. Adducci*, No. 20-11071, 2020 WL 2832255, at *2-3 (E.D. Mich. May 31, 2020).

legal permanent residents or naturalized U.S. citizens. ECF No. 1 at PageID.7. He is married to a U.S. citizen and has six U.S. born children. *See id.* at PageID.7, 13.

Since coming to America, Petitioner has accrued a decades-long "rap sheet" with at least 28 arrests.[2] As relevant here, in 2012, Petitioner was convicted for safe breaking, MICH. COMP.

---

[2] Petitioner has an extensive, decades-long "rap sheet," with at least 28 arrests as follows: August 2, 2001: arrested by Dearborn, Michigan, police for "an offense related to a stolen vehicle." [Petitioner] received a juvenile order of guilt for receiving and concealing stolen property valued at $20,000 or more; December 6, 2003: arrested by Detroit, Michigan, police for "a public order crime"; August 6, 2004: arrested by Dearborn, Michigan, police and convicted of operating a vehicle with no license or multiple licenses; December 9, 2004: arrested by Dearborn police and convicted of unlawfully taking a motor vehicle without authority; December 4, 2006: arrested and convicted of "domestic violence in Detroit"; January 23, 2007: arrested by Detroit police and convicted of "larceny in a building and breaking and entering a building"; July 6, 2007: arrested by Detroit police "for an offense relating to assault"; July 7, 2007: arrested by Dearborn police and convicted of "operating a vehicle with no license or multiple licenses"; July 17, 2007: arrested by Detroit police "for a traffic offense"; September 26, 2007: arrested by Detroit police for an "offense related to the obstruction of justice"; December 3, 2007: arrested by Detroit police for "an offense related to robbery"; June 8, 2008: arrested by Detroit police "for a public peace offense"; June 23, 2008: arrested by Detroit police for "a dangerous drugs offense"; August 14, 2008: arrested by Detroit police and convicted of "breaking and entering by illegal entry without the owner's permission"; October 19, 2008: arrested by Detroit police for "an offense related to burglary"; December 4, 2008: arrested by the Detroit police for "an offense related to obstruction of justice"; December 9, 2008: arrested by Detroit police for "a traffic offense"; January 9, 2009: arrested by Detroit police for "an armed robbery offense"; January 29, 2009: arrested by the Westland, Michigan, police "for a traffic offense"; February 20, 2009: arrested by the Dearborn police for traffic and controlled substance related offenses, resulting in a conviction of "operating a vehicle with a suspended, revoked or denied license"; March 28, 2009: arrested by Sidney, Ohio, police and convicted of "fleeing a police officer in a vehicle"; April 9, 2009: arrested by Dearborn police and convicted of "fleeing a police officer in a vehicle"; April 15, 2009: arrested by Dearborn police and convicted of "operating while intoxicated and controlled substance possession"; June 5, 2009: arrested by Dearborn police and convicted of "operating a vehicle with no license or multiple licenses"; June 15, 2011: arrested by Wayne, Michigan, police and convicted of "breaking and entering outside a showcase"; September 27, 2011: arrested by Dearborn police for a "public peace offense"; October 26, 2011: arrested by the Dearborn police department for safe-breaking—convicted and sentenced to three-and-a-half years' to 15 years' imprisonment with the MDOC; and April 16, 2012: arrested by Redford, Michigan, police for breaking and entering—convicted and sentenced as a habitual offender to three-and-a-half years' to 15 years' imprisonment with the MDOC. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1058–59 (E.D. Mich. 2020); ECF No. 5 at PageID.121; ECF No. 5-5 at PageID.174–79. The last two convictions were the basis for his Final Removal Order.

Laws § 750.531B, and then breaking and entering a building with intent as a habitual offender, Mich. Comp. Laws §§ 750.110, 769.12. ECF No. 1-2 at PageID.30.

Citing his 2012 criminal convictions, on August 20, 2013, ICE found Petitioner removable under 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii), revoking his permanent-resident status. ECF Nos. 1 at PageID.7; 1-2 at PageID.27–30. He did not contest the decision. After losing his green card, ICE released him but placed him under its official supervision. ECF No. 1 at PageID.8. Like thousands of aliens pending removal, he had to report to ICE regularly but otherwise lived a "normal" life.

On March 24, 2015, Petitioner received a "Final Removal Order" when Detroit Immigration Judge David H. Paruch[3] ordered Petitioner to be removed from the United States and deported to Iraq. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1057 (E.D. Mich. 2020); ECF No. 1 at PageID.3. Petitioner waived his right to appeal the Final Removal Order and was transferred into ICE custody on May 17, 2016. *Id.*; *Awshana*, 453 F. Supp. 3d at 1057. At some point, ICE released Petitioner from detention for the second time and again kept him under supervision.

In June 2017, after a high-profile raid on the Iraqi refugee community in Michigan, Petitioner was one of 144 refugees arrested and placed in custody; he then became a member of the "*Hamama* Class" in *Hamama v. Adducci*, 349 F. Supp. 3d 665 (E.D. Mich. 2018), *vacated and remanded*, 946 F.3d 875 (6th Cir. 2020). ECF No. 1 at PageID.3, 8.

---

[3] Notably, Judge Paruch also granted a stay of removal to one of Petitioner's co-petitioners, Wisam Hamana, in *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1057 (E.D. Mich. 2020). *See* ECF No. 7-5 at PageID.233–49. Like Petitioner, Hamana had cut his tether before winning a deferral under CAT. Judge Paruch cited the same changed country conditions since late 2019 that now make it exceedingly dangerous for Petitioner to return to Iraq. *See id.* at PageID.242–46. According to Petitioner, the Government did not appeal this order. ECF No. 7 at PageID.207 n.1. Petitioner has relied on this decision, in part, to argue that it is reasonably likely that the Immigration Court will grant him relief. *See id.*

Petitioner has been under federal supervision since the raid, some four years and seven months (55 months) ago today.

In June 2017, Petitioner filed a motion to reopen his Final Removal Order and applied for protection under the Convention Against Torture ("CAT"). *Id.* at PageID.6, 8. On November 8, 2017, the Immigration Court denied Petitioner's motion to reopen. *Id.* at PageID.8. He filed an appeal with the Board of Immigration Appeals (BIA), which he withdrew on August 31, 2018. *Awshana*, 453 F. Supp. 3d at 1057.

In the meantime, on November 20, 2018, United States District Judge Goldsmith granted a motion for a preliminary injunction for habeas relief sought by the *Hamama* Class, granting its members' release from detention pending removal. *See Hamama*, 349 F. Supp. 3d at 695 ("The Government has not met its burden of rebutting that Petitioners' removal is not significantly likely in the foreseeable future."). On December 20, 2018, ICE released Petitioner from custody for the third time, along with other detained Iraqi refugees, and placed him on a GPS tether under ICE's supervision. *Awshana*, 453 F. Supp. 3d at 1059; ECF No. 1 at PageID.8.

On March 13, 2019, the Iraqi Government issued a one-way *laissez-passer*[4] for Petitioner's deportation to Iraq, valid for six months. *Awshana*, 453 F. Supp. 3d at 1059.

On April 17, 2019, Detroit police officers responded to "an armed robbery/felonious assault where the victim alleged [that Petitioner] had robbed him at gunpoint and punched him in the face." ECF No. 5-5 at PageID.172. Upon the officers' arrival, Petitioner "fled into the house,

---

[4] Issued by the United Nations under Article VII of the 1946 Convention on the Privileges and Immunities of the United Nations, a *laissez-passer* is a diplomatic one-way travel document that acts as a passport and expires 48 hours after landing in the destination country. *See* Paulina Sosa, *The Regulatory Leash of the One-Year Refugee Travel Document*, 52 COLUM. J.L. & SOC. PROBS. 273, 276–77, 277 n.11 (2019); ECF No. 1 at PageID.8–9. Depending on the circumstances, a *laissez-passer* might leave a refugee with no travel documents and vulnerable to detention and torture by the receiving country's government. *Id.* at PageID.8.

refused to emerge, and barricaded himself inside." *Id.* at PageID.172. After exhausting all amicable means to apprehend Petitioner, the officers "deployed tear gas into the house." *Id.* at PageID.172–73. After being teargassed, Petitioner surrendered, and the police "recovered a semi-automatic pistol from a search of the house." *Id.*at PageID.173.

In early June 2019, to effectuate the Final Removal Order, ICE arranged a flight to deport Petitioner to Iraq escorted by ICE officers on June 23, 2019. ECF Nos. 1 at PageID.9; 5-4 at PageID.142.

On Thursday, June 20, 2019, Petitioner filed emergency motions in the Immigration Court: a motion to stay his deportation and a second motion to reopen his Final Removal Order. ECF Nos. 1 at PageID.9; 1-3 at PageID.31–54. On Friday, Petitioner "appeared as instructed at the ICE, ERO office," where ICE ordered him to report to the Detroit Metropolitan Airport on Sunday, June 23, 2019, at 4:00 PM EDT. *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 5 at PageID.119. Not hearing anything from the Immigration Court about his emergency motions, about seven hours before his deportation flight to Iraq, Petitioner cut his GPS tether and stayed home to care for his children. *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 5-4 at PageID.143. On Wednesday, June 25, 2019, two days after his deportation flight flew to Iraq without him, the Immigration Court issued its ruling on Petitioner's June 20, 2019 emergency motions, denying both. ECF No. 1 at PageID.9. Petitioner timely appealed the denial to the BIA. *Id.*

In July 2019, in response to Petitioner cutting off his GPS tether and failing to report for his deportation, ICE arrested Petitioner at home. *Id.* at PageID.4, 9. Fearing separation from his family and being sent to the war-torn turmoil in Iraq, Petitioner "barricaded himself in his home using a couch and washing machine." *Awshana*, 453 F. Supp. 3d at 1058. A special response team

broke into the house and arrested him, then ICE detained him and charged him with "Hampering Removal" under 8 U.S.C. § 1253(a)(1)(C). *Id.*

On August 5, 2019, United States Magistrate Judge Elizabeth A. Stafford denied Petitioner's request for bond pending trial, finding that he was a flight risk with a criminal history that included "[p]rior attempt(s) to evade law enforcement." *See* ECF No. 10, *in United States v. AL Sadoon*, No. 2:19-CR-20530 (E.D. Mich. filed Aug. 5, 2019).

To effectuate his Final Removal Order, on November 25, 2019, the Iraqi Government issued a second *laissez-passer* for Petitioner's deportation to Iraq. ECF No. 5-5 at PageID.173. On December 11, 2019, ICE arranged a second escorted flight, scheduled to deport Petitioner to Iraq on January 12, 2020. *Id.* On December 17, 2019, United States District Judge Terrence G. Berg dismissed Petitioner's "Hampering Removal" charges on the Government's motion "to allow ICE to effectuate [Petitioner's] removal," and he was placed in ICE's custody for the fourth time. *Id.* at PageID.173–74; *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 1-5 at PageID.58.

On January 10, 2020, the BIA granted Petitioner's request to stay the Final Removal Order, pending the decision of his June 25, 2019 appeal to the BIA. *Awshana*, 453 F. Supp. 3d at 1058. In this way, Petitioner's removal was again postponed, but his Final Removal Order nevertheless remained active. *See id.* While he was still in custody without a removal date,[5] on March 12, 2020, the BIA dismissed Petitioner's appeal of the Immigration Court's denial of his motion to reopen the Final Removal Order. ECF No. 18-1 at PageID.21, *in Al Sadoon v. Garland*, No. 20-3328 (6th

---

[5] On January 3, 2020, citing lack of jurisdiction, the Sixth Circuit Court of Appeals vacated Judge Goldsmith's November 20, 2018 grant of habeas relief to the *Hamama* class. *Hamama v. Adducci*, 946 F.3d 875, 877–78 (6th Cir. 2020). Under direction from the Sixth Circuit, on February 14, 2020, Judge Goldsmith ordered that Petitioner, along with the *Hamama* class, remain detained in a sealed order in the *Hamama* class action. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1058 (E.D. Mich. 2020).

Cir. filed Aug. 12, 2020). On March 24, 2020, Petitioner timely appealed to the Sixth Circuit. *Id.* With his appeal pending, he remained detained for removal under the Final Removal Order.[6]

**B.**

On October 13, 2020, the Government filed a motion requesting that the Sixth Circuit stay Petitioner's removal and remand his appeal to the BIA. ECF Nos. 1 at PageID.10; 1-6 at PageID.59–63; *see also* ECF No. 23, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Oct. 13, 2020). Specifically, the Government wanted the BIA to "reconsider and provide a more thorough analysis of the country conditions evidence Petitioner submitted with his motion to reopen," ECF No. 1-6 at PageID.60, and "reconsider its dismissal of Petitioner's motion pursuant to the fugitive disentitlement doctrine," *id.* at PageID.61.

Even though the charge was dismissed, in January 2021, ICE cited Petitioner's "Hampering Removal" charge to deny a request he made for release. ECF Nos. 1 at PageID.14; 1-7 at PageID.66. Then on February 10, 2021, the Immigration Court denied Petitioner's application for bond, citing a lack of authority to release him. ECF No. 1 at PageID.4.

On February 18, 2021, the Department of Homeland Security issued a memorandum (the "Johnson Memo") to all ICE employees, establishing three categories of noncitizens as priorities for deportation: National Security, Border Security, and Public Safety. *Id.* at PageID.12.

---

[6] On March 16, 2020, citing the COVID-19 pandemic, Petitioner requested habeas relief in the Eastern District of Michigan under 28 U.S.C. § 2241, *see Awshana v. Adducci*, 453 F. Supp. 3d 1045 (E.D. Mich. 2020), which United States District Judge David M. Lawson denied with prejudice. ECF No. 26, *in Awshana v. Adducci*, No. 2:20-cv-10699 (E.D. Mich. filed Apr. 29, 2020); *see also* ECF No. 5 at PageID.124. Petitioner appealed Judge Lawson's order to the Sixth Circuit Court of Appeals. ECF No. 5 at PageID.117; *see also* ECF No. 27, *in Awshana v. Adducci*, No. 2:20-cv-10699 (E. D. Mich. filed May 7, 2020). Petitioner filed a motion to voluntarily dismiss his appeal, which the Sixth Circuit granted. ECF No. 5-2; *see also Awshana v. Adducci*, No. 20-1433 (6th Cir. filed Aug. 27, 2020).

The next day, the Sixth Circuit granted the Government's motion to stay Petitioner's Final Removal Order and remand his case to the BIA. ECF No. 2 at PageID.100; *see also* ECF No. 1-11 (notifying the BIA of the stay and remand); ECF No. 26, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Feb. 19, 2021) ("[F]urther explanation by the BIA would aid our review.").

On April 12, 2021, Petitioner requested that ICE remove him from the priority-enforcement list, arguing that he did not fall within any of the Johnson Memo's priority categories. ECF Nos. 1 at PageID.15; 1-12 at PageID.85–89. On May 24, 2021, with no written analysis—but apparently "[a]fter weighing the factors presented in [his] request and upon review of [his] case"—ICE decided that Petitioner is "an agency priority" under the Johnson Memo and therefore refused to release him from detention. ECF Nos. 1 at PageID.15; 1-13 at PageID.91; 5-8.

On June 18, 2021, Petitioner filed a motion in this Court for a writ of habeas corpus under 18 U.S.C. § 2241, ECF No. 1, with a motion seeking a preliminary injunction to preclude his detention pending resolution of his habeas petition, ECF No. 2.

## II.

Before addressing the merits of Petitioner's motions, this Court must determine whether Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6), as Petitioner assumes, or 8 U.S.C. § 1226(c), as the Government assumes. "Section 1226[] applies when an alien is awaiting a decision on whether he will be removed from the United States. Section 1231(a) applies when an alien has already received a final decision that he will be removed from the United States." *Martinez v. Larose*, 968 F.3d 555, 561 (6th Cir. 2020).

Specifically, the Government argues that Petitioner "does not currently have a final order of removal since his immigration case is still pending in the BIA." ECF No. 5 at PageID.114. Consequently, the Government adds, Petitioner has no viable claim under *Zadvydas v. Davis,* 533

U.S. 678 (2001). *Id.* By contrast, Petitioner argues that his "ongoing detention violates 8 U.S.C. §1231 because [the Government] continues to detain [him] when it is not likely that [it] will be able to deport [him] in the reasonably foreseeable future." ECF No. 1 at PageID.20. Therefore, he concludes that his detention is governed by *Zadvydas*. *See id.* at PageID.20–22.

The parties do not adequately address the distinction between section 1226 and section 1231 as they apply to Petitioner.

The procedural posture of Petitioner's Final Removal Order depends on whether his removal period has begun under U.S.C. § 1231(a)(1)(B), which provides that "[t]he removal period begins on the latest of the following":

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

A final removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Petitioner waived his right to appeal the Final Removal Order on May 17, 2016. *Awshana*, 453 F. Supp. 3d at 1057. Consequently, Petitioner's Final Removal Order became administratively final, and his removal period therefore began, on May 17, 2016. *See* 8 U.S.C. § 1231(a)(1)(B)(i).

The Government argues that, according to 8 U.S.C. § 1231(a)(1)(B)(ii), the removal period of Petitioner's Final Removal Order was cancelled on March 12, 2020, when the BIA issued a final order after reviewing and ordering a stay of Petitioner's Final Removal Order. *See* ECF No.

18-1 at PageID.21, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Aug. 12, 2020); *Awshana*, 453 F. Supp. 3d at 1058. That is incorrect as a matter of law.

Only the circuit court of appeals can stay a final removal order for the purposes of 8 U.S.C. § 1231(a)(1)(B)(ii). *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 n.6 (9th Cir. 2008) ("[T]he exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals." (citing 8 U.S.C. §§ 1231(a)(1)(B)(ii), 1252(a)(5))); *accord Vulaj v. Baker*, No. 06-14988, 2006 WL 3253256, at *2 (E.D. Mich. Nov. 8, 2006) (finding that Congress vested judicial review "exclusively in the federal court of appeals" in May 2005 (citing 8 U.S.C. § 1252)). *But cf. Martinez v. Larose*, 968 F.3d 555, 563 n.6 (6th Cir. 2020) ("We cannot judicially review the reinstated removal order by the express terms of § 1231(a)(5)."). If the court of appeals issues a stay, then "the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review." *Prieto-Romero*, 534 F.3d at 1060 (citing 8 U.S.C. § 1231(a)(1)(B)(ii)).

The Sixth Circuit Court of Appeals stayed Petitioner's Final Removal Order on February 19, 2021. ECF No. 2 at PageID.100; *see also* ECF No. 1-11 (notifying the BIA of the stay); ECF No. 26, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Feb. 19, 2021). At that point, the question became whether the Sixth Circuit's stay effectively cancelled Petitioner's removal period under 8 U.S.C. § 1231(a)(1)(B)(ii). There is some law on both sides of the question.

According to precedent, the Sixth Circuit's stay seemingly tolled Petitioner's removal period. *See Vulaj*, 2006 WL 3253256, at *3 ("The removal period is not tolled under § 1231(a)(1)(B)(ii) or (iii) because a stay of removal has not been entered by any court and Petitioner has only been detained in accordance with immigration proceedings.").

But according to statute, the Sixth Circuit's stay did not toll Petitioner's removal period. Indeed, Congress has explicitly said that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), . . . or any offense covered by section 1227(a)(2)(A)(ii)." 8 U.S.C. § 1252(a)(2)(C). Petitioner's Final Removal Order provides that he is removable for committing an offense under 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii). ECF No. 1-2 at PageID.27–30. Therefore, Petitioner's Final Removal Order could not have been "judicially reviewed" by the Sixth Circuit due to lack of jurisdiction.[7]

In this way, it would appear that Petitioner has a viable *Zadvydas* claim. But the parties did not brief this complex statutory issue. For this reason, the parties will be directed to submit supplemental briefing to answer the question: Is Petitioner's detention governed by 8 U.S.C. § 1231(a)(6), as Petitioner assumes, or 8 U.S.C. § 1226(c), as the Government assumes?

### III.

Accordingly, it is **ORDERED** that the parties are **DIRECTED** to submit supplemental briefing regarding whether Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6) or 8 U.S.C. § 1226(c). The parties' briefs shall be no longer than 20 pages, and they are due **on or before February 7, 2022**.

Dated: January 25, 2022            s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge

---

[7] Incidentally, this might mean that the Sixth Circuit might have stayed Petitioner's Final Removal Order without jurisdiction.