UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI AL-SADOON,

                    Petitioner,                           Case No. 1:21-cv-11438

v.                                                        Honorable Thomas L. Ludington
                                                          United States District Judge
ROBERT K. LYNCH, JR., *et al.*,

                    Respondents.
_____/

**OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING AS MOOT MOTION FOR PRELIMINARY INJUNCTION AND
DIRECTING CLERK'S OFFICE TO MODIFY CASE CAPTION**

On June 18, 2021, Petitioner Ali Najim Al-Sadoon, detained by United States Immigration

and Customs Enforcement ("ICE") at the St. Clair County Detention Facility in Port Huron,

Michigan, filed a petition for writ of habeas corpus under 18 U.S.C. § 2241, seeking release during

the pendency of his immigration appeal. ECF No. 1. Concurrent with his Petition, he filed a motion

for a preliminary injunction.[1] ECF No. 2. As explained hereafter, Petitioner will be granted a writ

of habeas corpus, and his motion for a preliminary injunction will therefore be denied as moot.

**I.**

On June 23, 1994, Petitioner came to the United States with his Shi'ite parents as an

eight-year-old boy. ECF Nos. 1 at PageID.6; 1-2 at PageID.30. Petitioner's family all became

---

[1] The Motion for a Preliminary Injunction is titled "Motion for Temporary Restraining Order"
under Federal Rule of Civil Procedure 65. ECF No. 2. Despite its title, the Motion seeks a
preliminary injunction and, therefore, is not an *ex parte* motion for a temporary restraining order.
This Court will treat Petitioner's Motion as one for a preliminary injunction. *Toma v. Adducci*, No.
20-11071, 2020 WL 2832255, at *2-3 (E.D. Mich. May 31, 2020).

either legal permanent residents or naturalized U.S. citizens. ECF No. 1 at PageID.7. He is married

to a U.S. citizen and has six U.S.–born children. *See id.* at PageID.7, 13.

Since coming to America, Petitioner has accrued a decades-long "rap sheet" with at least

28 arrests.[2] As relevant here, in 2012, Petitioner was convicted for safe breaking, MICH. COMP.

---

[2] Petitioner has an extensive, decades-long "rap sheet," with at least 28 arrests as follows: August 2, 2001: arrested by Dearborn, Michigan police for "an offense related to a stolen vehicle." [Petitioner] received a juvenile order of guilt for receiving and concealing stolen property valued at $20,000 or more; December 6, 2003: arrested by Detroit, Michigan police for "a public order crime"; August 6, 2004: arrested by Dearborn, Michigan police and convicted of operating a vehicle with no license or multiple licenses; December 9, 2004: arrested by Dearborn police and convicted of unlawfully taking a motor vehicle without authority; December 4, 2006: arrested and convicted of "domestic violence in Detroit"; January 23, 2007: arrested by Detroit police and convicted of "larceny in a building and breaking and entering a building"; July 6, 2007: arrested by Detroit police "for an offense relating to assault"; July 7, 2007: arrested by Dearborn police and convicted of "operating a vehicle with no license or multiple licenses"; July 17, 2007: arrested by Detroit police "for a traffic offense"; September 26, 2007: arrested by Detroit police for an "offense related to the obstruction of justice"; December 3, 2007: arrested by Detroit police for "an offense related to robbery"; June 8, 2008: arrested by Detroit police "for a public peace offense"; June 23, 2008: arrested by Detroit police for "a dangerous drugs offense"; August 14, 2008: arrested by Detroit police and convicted of "breaking and entering by illegal entry without the owner's permission"; October 19, 2008: arrested by Detroit police for "an offense related to burglary"; December 4, 2008: arrested by the Detroit police for "an offense related to obstruction of justice"; December 9, 2008: arrested by Detroit police for "a traffic offense"; January 9, 2009: arrested by Detroit police for "an armed robbery offense"; January 29, 2009: arrested by the Westland, Michigan police "for a traffic offense"; February 20, 2009: arrested by the Dearborn police for traffic and controlled substance related offenses, resulting in a conviction of "operating a vehicle with a suspended, revoked or denied license"; March 28, 2009: arrested by Sidney, Ohio police and convicted of "fleeing a police officer in a vehicle"; April 9, 2009: arrested by Dearborn police and convicted of "fleeing a police officer in a vehicle"; April 15, 2009: arrested by Dearborn police and convicted of "operating while intoxicated and controlled substance possession"; June 5, 2009: arrested by Dearborn police and convicted of "operating a vehicle with no license or multiple licenses"; June 15, 2011: arrested by Wayne, Michigan police and convicted of "breaking and entering outside a showcase"; September 27, 2011: arrested by Dearborn police for a "public peace offense"; October 26, 2011: arrested by the Dearborn police department for safe-breaking— convicted and sentenced to three-and-a-half years' to 15 years' imprisonment with the MDOC; and April 16, 2012: arrested by Redford, Michigan police for breaking and entering—convicted and sentenced as a habitual offender to three-and-a-half years' to 15 years' imprisonment with the MDOC. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1058–59 (E.D. Mich. 2020); ECF No. 5 at PageID.121; ECF No. 5-5 at PageID.174–79. The last two convictions were the basis for his Final Removal Order.

LAWS § 750.531B, and then breaking and entering a building with intent as a habitual offender, MICH. COMP. LAWS §§ 750.110, 769.12. ECF No. 1-2 at PageID.30.

## II.

### A.

On August 20, 2013, the Department of Homeland Security (DHS) found Petitioner removable under 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii), revoking his permanent-resident status. ECF Nos. 1 at PageID.7; 1-2 at PageID.27–30. He did not contest the decision. After losing his green card, ICE released him but placed him under its official supervision. ECF No. 1 at PageID.8. Like thousands of aliens pending removal, he had to report to ICE regularly but otherwise lived a "normal" life.

A "Final Removal Order" was entered by Detroit Immigration Judge David H. Paruch[3] *on March 24, 2015*, which directed Petitioner to be removed from the United States and deported to Iraq. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1057 (E.D. Mich. 2020); ECF No. 1 at PageID.3. Petitioner waived his right to appeal the Final Removal Order and was transferred into ICE custody on May 17, 2016. *Id.*; *Awshana*, 453 F. Supp. 3d at 1057. At some point, ICE released Petitioner from detention for the second time and again kept him under supervision.

In June 2017, Petitioner filed a motion to reopen his Final Removal Order and applied for protection under the Convention Against Torture ("CAT"). ECF No. 1 at PageID.6, 8. On

---

[3] Notably, Judge Paruch also granted a stay of removal to one of Petitioner's co-petitioners, Wisam Hamana, in *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1057 (E.D. Mich. 2020). *See* ECF No. 7-5 at PageID.233–49. Like Petitioner, Hamana had cut his tether before winning a deferral under CAT. Judge Paruch cited the same changed country conditions since late 2019, making it exceedingly dangerous for Petitioner to return to Iraq. *See id.* at PageID.242–46. According to Petitioner, the Government did not appeal this order. ECF No. 7 at PageID.207 n.1. Petitioner has relied on this decision, in part, to argue that it is reasonably likely that the Immigration Court will grant him relief. *See id.*

November 8, 2017, the Immigration Court denied Petitioner's motion to reopen. *Id.* at PageID.8. He filed an appeal with the Board of Immigration Appeals (BIA), which he withdrew on August 31, 2018. *Awshana*, 453 F. Supp. 3d at 1057.

## B.

In June 2017, after a high-profile raid on the Iraqi refugee community in Michigan, Petitioner was one of 144 refugees arrested and placed in custody; he then became a member of the "*Hamama* Class" in *Hamama v. Adducci*, 349 F. Supp. 3d 665 (E.D. Mich. 2018), *vacated and remanded*, 946 F.3d 875 (6th Cir. 2020). ECF No. 1 at PageID.3, 8.

On November 20, 2018, United States District Judge Goldsmith granted a motion for a preliminary injunction for habeas relief sought by the *Hamama* Class, granting its members' release from detention pending removal. *See Hamama*, 349 F. Supp. 3d at 695 ("The Government has not met its burden of rebutting that Petitioners' removal is not significantly likely in the foreseeable future."). On December 20, 2018, ICE released Petitioner from custody for the third time, along with other detained Iraqi refugees, and placed him on a GPS tether under ICE's supervision. *Awshana*, 453 F. Supp. 3d at 1059; ECF No. 1 at PageID.8.

## C.

On March 13, 2019, the Iraqi Government issued a one-way *laissez-passer*[4] for Petitioner's deportation to Iraq, valid for six months. *Awshana*, 453 F. Supp. 3d at 1058.

---

[4] Issued by the United Nations under Article VII of the 1946 Convention on the Privileges and Immunities of the United Nations, a *laissez-passer* is a diplomatic one-way travel document that acts as a passport and expires 48 hours after landing in the destination country. *See* Paulina Sosa, *The Regulatory Leash of the One-Year Refugee Travel Document*, 52 COLUM. J.L. & SOC. PROBS. 273, 276–77, 277 n.11 (2019); ECF No. 1 at PageID.8–9. Depending on the circumstances, a *laissez-passer* might leave a refugee with no travel documents and vulnerable to detention and torture by the receiving country's government. *Id.* at PageID.8.

On April 17, 2019, Detroit police officers responded to "an armed robbery/felonious assault where the victim alleged [that Petitioner] had robbed him at gunpoint and punched him in the face." ECF No. 5-5 at PageID.172. Upon the officers' arrival, Petitioner "fled into the house, refused to emerge, and barricaded himself inside." *Id.* at PageID.172. After exhausting all amicable means to apprehend Petitioner, the officers "deployed tear gas into the house." *Id.* at PageID.172–73. After being teargassed, Petitioner surrendered, and the police "recovered a semi-automatic pistol from a search of the house." *Id.*at PageID.173.

In early June 2019, to effectuate the Final Removal Order, ICE arranged a flight to deport Petitioner to Iraq escorted by ICE officers on June 23, 2019. ECF Nos. 1 at PageID.9; 5-4 at PageID.142.

## D.

On Thursday, June 20, 2019, Petitioner filed emergency motions in the Immigration Court: a motion to stay his deportation and a second motion to reopen his Final Removal Order. ECF Nos. 1 at PageID.9; 1-3 at PageID.31–54. On Friday, Petitioner "appeared as instructed at the ICE, ERO office," where ICE ordered him to report to the Detroit Metropolitan Airport on Sunday, June 23, 2019, at 4:00 PM EDT. *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 5 at PageID.119. Not hearing anything from the Immigration Court about his emergency motions, about seven hours before his deportation flight to Iraq, Petitioner cut his GPS tether and stayed home to care for his children. *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 5-4 at PageID.143. On Wednesday, June 25, 2019, two days after his deportation flight flew to Iraq without him, the Immigration Court issued its ruling on Petitioner's June 20, 2019 emergency motions, denying both. ECF No. 1 at PageID.9. Petitioner timely appealed the denial to the BIA. *Id.*

In July 2019, in response to Petitioner cutting off his GPS tether and failing to report for his deportation, ICE arrested Petitioner at home. *Id.* at PageID.4, 9. Fearing separation from his family and being sent to the war-torn turmoil in Iraq, Petitioner "barricaded himself in his home using a couch and washing machine." *Awshana*, 453 F. Supp. 3d at 1058. A special response team broke into the house and arrested him. *Id.*

<strong>E.</strong>

After his arrest, the DHS detained Petitioner and charged him with "Hampering Removal" under 8 U.S.C. § 1253(a)(1)(C). *Id.*

On August 5, 2019, United States Magistrate Judge Elizabeth A. Stafford denied Petitioner's request for bond pending trial, finding that he was a flight risk with a criminal history that included "[p]rior attempt(s) to evade law enforcement." *See* ECF No. 10, *in United States v. AL Sadoon*, No. 2:19-CR-20530 (E.D. Mich. filed Aug. 5, 2019).

To effectuate his Final Removal Order, on November 25, 2019, the Iraqi Government issued a second *laissez-passer* for Petitioner's deportation to Iraq. ECF No. 5-5 at PageID.173. On December 11, 2019, ICE arranged a second escorted flight to deport Petitioner to Iraq on January 12, 2020. *Id.* On December 17, 2019, United States District Judge Terrence G. Berg dismissed Petitioner's "Hampering Removal" charges on the Government's motion "to allow ICE to effectuate [Petitioner's] removal," and he was placed in ICE's custody for the fourth time. *Id.* at PageID.173–74; *Awshana*, 453 F. Supp. 3d at 1058; ECF No. 1-5 at PageID.58.

<strong>F.</strong>

On January 10, 2020, the BIA granted Petitioner's request to stay the Final Removal Order in order to address his June 25, 2019 appeal to the BIA. *Awshana*, 453 F. Supp. 3d at 1058. Petitioner's removal was again stayed, but the Final Removal Order nevertheless remained active.

*See id.* While he was still in custody without a removal date,[5] on March 12, 2020, the BIA dismissed Petitioner's appeal of the Immigration Court's denial of his motion to reopen the Final Removal Order. ECF No. 18-1 at PageID.21, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Aug. 12, 2020). On March 24, 2020, Petitioner timely appealed to the Sixth Circuit. *Id.* With his appeal pending, he remained detained for removal under the Final Removal Order.[6]

## G.

On October 13, 2020, the Government filed a motion requesting that the Sixth Circuit stay Petitioner's removal and remand his appeal to the BIA. ECF Nos. 1 at PageID.10; 1-6 at PageID.59–63; *see also* ECF No. 23, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Oct. 13, 2020). Specifically, the Government sought to have the BIA "reconsider and provide a more thorough analysis of the country conditions evidence Petitioner submitted with his motion to reopen," ECF No. 1-6 at PageID.60, and "reconsider its dismissal of Petitioner's motion pursuant to the fugitive disentitlement doctrine," *id.* at PageID.61.

Even though the charge was dismissed, in January 2021, ICE cited Petitioner's "Hampering Removal" charge to deny Petitioner's request for release. ECF Nos. 1 at PageID.14; 1-7 at

---

[5] On January 3, 2020, citing lack of jurisdiction, the Sixth Circuit Court of Appeals vacated Judge Goldsmith's November 20, 2018 grant of habeas relief to the *Hamama* class. *Hamama v. Adducci*, 946 F.3d 875, 877–78 (6th Cir. 2020). Under direction from the Sixth Circuit, on February 14, 2020, Judge Goldsmith ordered that Petitioner, along with the *Hamama* class, remain detained in a sealed order in the *Hamama* class action. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1058 (E.D. Mich. 2020).

[6] On March 16, 2020, citing the COVID-19 pandemic, Petitioner requested habeas relief in the Eastern District of Michigan under 28 U.S.C. § 2241, *see Awshana v. Adducci*, 453 F. Supp. 3d 1045 (E.D. Mich. 2020), which United States District Judge David M. Lawson denied with prejudice. ECF No. 26, *in Awshana v. Adducci*, No. 2:20-cv-10699 (E.D. Mich. filed Apr. 29, 2020); *see also* ECF No. 5 at PageID.124. Petitioner appealed Judge Lawson's order to the Sixth Circuit Court of Appeals. ECF No. 5 at PageID.117; *see also* ECF No. 27, *in Awshana v. Adducci*, No. 2:20-cv-10699 (E. D. Mich. filed May 7, 2020). Petitioner filed a motion to voluntarily dismiss his appeal, which the Sixth Circuit granted. ECF No. 5-2; *see also Awshana v. Adducci*, No. 20-1433 (6th Cir. filed Aug. 27, 2020).

PageID.66. Then on February 10, 2021, the Immigration Court denied Petitioner's application for bond, citing a lack of authority to release him. ECF No. 1 at PageID.4.

## H.

On February 18, 2021, the DHS issued a memorandum (the "Johnson Memo") to all ICE employees, establishing three categories of noncitizens as priorities for deportation: National Security, Border Security, and Public Safety. *Id.* at PageID.12.

The next day, the Sixth Circuit granted the Government's motion to stay Petitioner's Final Removal Order and remanded his case back to the BIA. ECF No. 2 at PageID.100; *see also* ECF No. 1-11 (notifying the BIA of the stay and remand); ECF No. 26, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Feb. 19, 2021) ("[F]urther explanation by the BIA would aid our review.").

On April 12, 2021, Petitioner requested that ICE remove him from the priority-enforcement list, arguing that he did not fall within any of the Johnson Memo's priority categories. ECF Nos. 1 at PageID.15; 1-12 at PageID.85–89. On May 24, 2021, with no written analysis—but apparently "[a]fter weighing the factors presented in [his] request and upon review of [his] case"—ICE decided that Petitioner is "an agency priority" under the Johnson Memo and therefore refused to release him from detention. ECF Nos. 1 at PageID.15; 1-13 at PageID.91; 5-8.

## II.

On June 18, 2021, Petitioner filed the immediate motion for a writ of habeas corpus under 18 U.S.C. § 2241, ECF No. 1, with a motion seeking a preliminary injunction to preclude his detention pending resolution of his habeas petition, ECF No. 2.

To address the merits of Petitioner's motions, this Court had to determine whether Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6), as Petitioner assumed, or 8 U.S.C. § 1226(c), as the Government assumed.

- 8 -

Specifically, the Government argued that Petitioner "does not currently have a final order of removal since his immigration case is still pending in the BIA." ECF No. 5 at PageID.114. Consequently, the Government added, Petitioner has no viable claim under *Zadvydas v. Davis,* 533 U.S. 678 (2001). *Id.* By contrast, Petitioner argued that his "ongoing detention violates 8 U.S.C. §1231 because [the Government] continues to detain [him] when it is not likely that [it] will be able to deport [him] in the reasonably foreseeable future." ECF No. 1 at PageID.20. Therefore, he concluded that his detention is governed by *Zadvydas*. *See id.* at PageID.20–22.

Because the parties' initial briefing did not squarely address the issue, on January 25, 2022, this Court directed the parties to file supplemental briefing. *See generally Al-Sadoon v. Adducci*, No. 1:21-CV-11438, 2022 WL 233169 (E.D. Mich. Jan. 25, 2022).

On February 7, 2022, the parties responded, agreeing "that Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6)." ECF Nos. 10; 11. Specifically, citing "unusual circumstances," the Government "respectfully withdr[ew its] argument" that § 1226 applied after informing itself with "additional procedural developments, review, consultation with counterparts within the Department of Justice, and the Supreme Court's June 29, 2021, decision in *Johnson v. Guzman Chavez*, No. 19-897, 2021 WL 2653264 (U.S. June 29, 2021)." ECF No. 11 at PageID.389–90.

Although the Government now concedes that "Petitioner continues to be detained under § 1231(a)(6)," it also contends that "Petitioner should not be released from custody because there is a significant likelihood of removal in the reasonably foreseeable future." *Id.* at PageID.390. Petitioner responds that he "has already been held in detention for more than twenty-five months" and, therefore, he "is entitled to relief under *Zadvydas*." ECF No. 10 at PageID.384.

**III.**

- 9 -

Before addressing the merits of the Petition, this Court will address the relevant distinction between § 1226 and § 1231.

The procedural posture of Petitioner's Final Removal Order depends on when his removal period began. For that determination, 8 U.S.C. § 1231(a)(1)(B) provides that "[t]he removal period begins on the latest of the following":

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

For the purposes of § 1231(a)(1)(B)(i), a final removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Petitioner waived his right to appeal the Final Removal Order on May 17, 2016. *Awshana*, 453 F. Supp. 3d at 1057. Consequently, Petitioner's Final Removal Order became administratively final—and his removal period therefore began—on May 17, 2016. *See* 8 U.S.C. § 1231(a)(1)(B)(i).

The Government initially argued that according to § 1231(a)(1)(B)(ii), the removal period of Petitioner's Final Removal Order was "cancelled" on March 12, 2020, when the BIA issued its final order after staying Petitioner's Final Removal Order. *See* ECF No. 18-1 at PageID.21, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Aug. 12, 2020); *Awshana*, 453 F. Supp. 3d at 1058. That is incorrect.

Only the circuit court of appeals can stay a final removal order under 8 U.S.C. § 1231(a)(1)(B)(ii). *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 n.6 (9th Cir. 2008) ("[T]he

exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals." (citing  8 U.S.C. §§ 1231(a)(1)(B)(ii), 1252(a)(5))); *accord Vulaj v. Baker*, No. 06-14988, 2006 WL 3253256, at \*2 (E.D. Mich. Nov. 8, 2006) (finding that Congress vested judicial review "exclusively in the federal court of appeals" in May 2005 (citing 8 U.S.C. § 1252)). *But cf. Martinez v. Larose*, 968 F.3d 555, 563 n.6 (6th Cir. 2020) ("We cannot judicially review the reinstated removal order by the express terms of § 1231(a)(5)."). If the court of appeals issues a stay, then "the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review." *Prieto-Romero*, 534 F.3d at 1060 (citing 8 U.S.C. § 1231(a)(1)(B)(ii)).

On February 19, 2021, the Sixth Circuit Court of Appeals stayed Petitioner's Final Removal Order and directed the BIA to remand Petitioner's motion back to the Immigration Court. ECF No. 2 at PageID.100; *see also* ECF No. 1-11 (notifying the BIA of the stay); ECF No. 26, *in Al Sadoon v. Garland*, No. 20-3328 (6th Cir. filed Feb. 19, 2021).

But the Sixth Circuit's stay did not toll Petitioner's removal period. Indeed, Congress has explicitly said that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), . . . or any offense covered by section 1227(a)(2)(A)(ii)." 8 U.S.C. § 1252(a)(2)(C). Petitioner's Final Removal Order provides that he is removable for committing an offense under 8 U.S.C. § 1227(a)(2)(A)(ii) *and* (iii). ECF No. 1-2 at PageID.27–30. Therefore, the Sixth Circuit had no jurisdiction to "judicially review" Petitioner's Final Removal Order. Or, in the Government's words, "a stay of removal in connection with a review of a denied motion to reopen removal proceedings does not revert Petitioner's status to pre-final order of removal under § 1226." ECF No. 11 at PageID.389.

- 11 -

On September 24, 2021, more than seven months after the Sixth Circuit's remand order, the BIA remanded Petitioner's motion. ECF No. 11-1 at PageID.397–401. Specifically, the remand directs the Immigration Court (1) "to make specific factual findings in the first instance with respect to whether [Petitioner] has established material changed country conditions arising in Iraq since his last hearing in 2015," *id.* at PageID.400; and (2) "whether the fugitive disentitlement doctrine is applicable to this case," *id.* at PageID.401.

The remand does not affect Petitioner's Final Removal Order. Indeed, a remand of a motion to reopen an application under CAT neither undoes nor reinstates an otherwise administratively final removal order. *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Pierre v. Sabol*, No. 1:11-CV-2184, 2012 WL 1658293, at *4 (M.D. Pa. May 11, 2012) (finding that a motion to reopen pending before an immigration judge does not affect the removal period); *see also Martinez-Senan v. Tritten*, No. 17-CV-5080 (WMW/BRT), 2018 WL 1226110, at *1 (D. Minn. Mar. 9, 2018) (finding that a final removal order becomes administratively final when the BIA affirms it or dismisses an appeal of it) (citing *Giraldo v. Holder*, 654 F.3d 609, 611 (6th Cir. 2011)); *Dayo v. Holder*, No. CV SA-12-CA-81-PM, 2012 WL 12957381, at *8 (W.D. Tex. Apr. 4, 2012) (finding that a final removal order becomes administratively final when a petitioner waives the right to appeal it); *Jusufi v. Chertoff*, No. 07-15450, 2007 WL 4591760, at *4 (E.D. Mich. Dec. 28, 2007) (finding that a final removal order becomes administratively final when the BIA denies an appeal of it) (citing 8 U.S.C. § 1231(a)(1)(B)(i)).

At this point in time, Petitioner's motion to reopen is before Judge Paruch, who issued the last immigration order related to Petitioner's case on October 26, 2021. ECF No. 11-2 at PageID.403–04. Judge Paruch directed Petitioner to respond by November 29, 2021, the DHS to respond by December 23, 2021, and the Government to respond by January 14, 2022. *Id.* at

PageID.403. Judge Paruch concluded that "[o]nce all the submissions have been received, the Court will set deadlines for submissions of written arguments on the two issues [and] deliberate and issue a new decision." *Id.* at PageID.404.

The Immigration Court's pending review of Petitioner's motion to reopen also does not affect his Final Removal Order. *Pierre*, 2012 WL 1658293, at *4. Accordingly, Petitioner's removal period continues to run from May 17, 2016, and his detention period under *Zadvydas*, therefore, continues to run from December 17, 2019.

Taking judicial notice of the Immigration Court's proceedings,[7] this Court notes that Judge Paruch has not issued a scheduling order in Petitioner's immigration case as of February 17, 2022.

**IV.**

Because Petitioner is detained under 8 U.S.C. § 1231(a)(6), *Zadvydas* and its progeny afford him protection under the Due Process Clause of the United States Constitution. *Toma v. Adducci*, 535 F. Supp. 3d 651, 657 (E.D. Mich. 2021).

Petitioner has been in ICE's custody since April 17, 2019, but the Government dismissed his criminal charges without prejudice on December 17, 2019. As indicated, for *Zadvydas* purposes, Petitioner has been detained by ICE under § 1231(a)(6), not charged with any crime, for 757 days—more than 17% of his life.[8] *See* BENJAMIN FRANKLIN, POOR RICHARD'S ALMANACK 35 (1914) ("Lost time is never found again.").

**A.**

To succeed on his claim, Petitioner must show that his civil detention is unconstitutional. Weighing in Petitioner's favor, "[i]t is well established that the Fifth Amendment entitles aliens to

---

[7] This information is publicly available on the DOJ's website by entering Petitioner's A-File Number: 071-674-091. *See* https://acis.eoir.justice.gov/en/.

[8] Petitioner was born on July 1, 1986. ECF No. 1-2 at PageID.28.

due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This fundamental right applies to every human being. *See id.* at 721 (Kennedy, J., joined by Roberts, C.J., and Scalia & Thomas, JJ., dissenting) ("Still, both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious."); *accord* Lauren Schusterman, Note, *A Suspended Death Sentence: Habeas Review of Expedited Removal Decisions*, 118 MICH. L. REV. 655, 671–72 (2020) (noting that "noncitizens . . . within the territorial United States are entitled to at least minimal constitutional protections").

Petitioner contends that after *Zadvydas* and *Demore*, every circuit court of appeals has found that immigration-status determinations and due-process determinations require a hearing for noncitizens subject to unreasonably prolonged detention pending removal proceedings. ECF No. 1 at PageID.17. All but one of the opinions Petitioner string cites have been withdrawn, vacated, abrogated, reversed, or overruled. *See Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) (detention under 8 U.S.C. § 1226(c)), *vacated*, 890 F.3d 952 (11th Cir. 2018); *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016) (8 U.S.C. § 1226(c)), *opinion withdrawn on reconsideration*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (8 U.S.C. § 1226(c)), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) (8 U.S.C. § 1226(c) and 8 U.S.C. § 1225(b)), *rev'd sub nom. Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Diop v. ICE*, 656 F.3d 221 (3d Cir. 2011) (8 U.S.C. § 1226(c)), *overruled by Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (8 U.S.C. § 1226(c)), *abrogated by Martinez*

*v. Larose*, 968 F.3d 555 (6th Cir. 2020). The remaining opinion is not controlling in the Sixth

Circuit. *See Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (8 U.S.C. § 1231(a)).

Yet the recognition that six months is a substantial period of confinement—and is the time

after which additional process is required to support continued detention—is deeply rooted in the

United States's legal tradition. With few exceptions, "in the late 18th century in America crimes

triable without a jury were for the most part punishable by no more than a six-month prison term."

*Duncan v. Louisiana*, 391 U.S. 145, 161, 161 n.34 (1968). Consistent with this tradition, the

Supreme Court has found six months to be the maximum time a federal court may confine someone

for criminal contempt "absent a jury trial or waiver thereof." *Cheff v. Schnackenberg*, 384 U.S.

373, 380 (1966).

In the contemporary confinement context, "[d]ue process requires that the nature and

duration of commitment bear some reasonable relation to the purpose for which the individual is

committed." *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 250 (1972) (quoting *Jackson v. Indiana*,

406 U.S. 715, 738 (1972)).

Courts that have applied the "reasonable relation" test have considered three main factors

to determine whether a detention is reasonable. First is whether the noncitizen has raised a "good

faith" challenge to removal—that is, whether the challenge is "legitimately raised" and presents

"real issues." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015).[9]

---

[9] Notably, "aliens should [not] be punished for pursuing avenues of relief and appeals." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016) (citing *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)), *vacated*, 890 F.3d 952 (11th Cir. 2018). Thus, courts should not count a continuance against the noncitizen when he obtained it in good faith to prepare his removal case. Instead, only "[e]vidence that the alien acted in bad faith or sought to deliberately slow the proceedings"—for example, by "[seeking] repeated or unnecessary continuances, or [filing] frivolous claims and appeals"—"cuts against" providing a bond hearing. *Id.*; *see also Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015); *Ly*, 351 F.3d at 272.

Second, reasonableness is a "function of the length of the detention," and detentions longer than six months are presumptively unreasonable. *Id.* at 477–78; *accord Sopo*, 825 F.3d at 1217–18. Third, is the likelihood that detention will continue pending future proceedings. *Chavez-Alvarez*, 783 F.3d at 478 (finding a detention unreasonable after ninth months, because the parties could "have reasonably predicted that [the petitioner's] appeal would take a substantial amount of time, making his already lengthy detention considerably longer"); *Sopo*, 825 F.3d at 128; *Reid*, 819 F.3d at 500.

The *Zadvydas* Court held that detention of an alien subject to removal due to a criminal conviction is presumptively reasonable until six months have passed. Jenna Neumann, Note, *Proposing a One-Year Time Bar for 8 U.S.C. § 1226(c)*, 115 MICH. L. REV. 707, 729 (2017) ("Timelines with strict deadlines are at times necessary, especially when the lives of individuals are at stake."). But "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. If the Government fails to "respond with evidence sufficient to rebut that showing," the detainee must be released under conditions of supervision. *Id.* at 700–01. Additionally, the longer the post-final-order detention continues, what is considered to be "reasonably foreseeable" conversely narrows, requiring the Government to show a more immediate prospect of removal "for the detention to remain reasonable." *Id.* at 701. In other words, the Government's burden gradually increases after the sixth-month mark.

## B.

Petitioner argues that his removal from the United States is not substantially likely in the reasonably foreseeable future. To that end, he cites his pending case in the Immigration Court, the

travel restrictions wrought by the global COVID-19 pandemic, the political turmoil in Iraq, his lack of priority-release classification under the Johnson Memo, the Sixth Circuit's stay, and the years-long proceedings that would likely follow if the Immigration Court denies his motion to reopen. *See generally* ECF Nos. 1; 10.

Petitioner presents two possibilities to make his point: Judge Paruch can either grant or deny the motion to reopen. ECF No. 10 at PageID.383. On the one hand, Petitioner contends, if Judge Paruch grants the motion, then the Final Removal Order "will be undisturbed, and an entirely new proceeding will begin before the IJ for [Petitioner] to seek CAT relief from the 2015 order." *Id.* On the other hand, Petitioner explains, if Judge Paruch denies the motion, then Petitioner "will continue to litigate the immigration case for several more years," including an "appeal to the BIA" and then a "petition for a stay from the Sixth Circuit." *Id.* Petitioner concludes that, in either case, the Final Removal Order would not be affected, and Petitioner's detention would incrementally become more unreasonable. *Id.* at PageID.384.

The Government takes the opposite position. Specifically, the Government contends that "the motion [to reopen] is fully briefed, and a decision could issue any day." ECF No. 11 at PageID.391. If Judge Paruch grants the motion to reopen, the Government adds, "Petitioner's detention reverts to § 1226, and his detention would be mandatory given his extensive criminal history." *Id.*

### C.

Although pending immigration proceedings might explain the delay in removing a deportable alien, "it has no bearing on the question of the likelihood that removal can be achieved" in the reasonably foreseeable future. *Toma v. Adducci*, 535 F. Supp. 3d 651, 659 (E.D. Mich. 2021); *see also Pierre v. Sabol*, No. 1:11-CV-2184, 2012 WL 1658293, at *4 (M.D. Pa. May 11,

2012). Petitioner *may not* rely on the pendency of his immigration proceedings alone as a basis for finding that removal *cannot* be accomplished in the reasonably foreseeable future. *See Toma*, 535 F. Supp. 3d at 659. An immigration proceeding, like the Government's authority to detain an alien under 8 U.S.C. § 1226(c), "has 'a definite termination point.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018). Similarly, the Government *may not* rely on the pendency of immigration proceedings to sidestep its obligation to demonstrate that removal *can* be accomplished in the reasonably foreseeable future after the proceedings conclude. *Toma*, 535 F. Supp. 3d at 659.

Ultimately, the basic rule of *Zadvydas* is fatal to the Government's position. As post-final-order detention continues, the "reasonably foreseeable future" shrinks, requiring the Government to show a more immediate prospect of removal "for detention to remain reasonable." *Zadvydas*, 533 U.S. at 701. Indeed, "one can hardly argue that detaining noncitizens for potentially as long as fifteen months is permissible in the withholding context when the Court has explicitly expressed its belief that 'Congress previously doubted the constitutionality of [post-removal period] detention for more than six months.'" Mohamed T. Hegazi, Comment, *To Be or Not to Be Detained: Why Reinstated Removal Orders During Withholding-Only Proceedings Are Not Administratively Final*, 15 SETON HALL CIR. REV. 57, 78 (2019) (quoting *Zadvydas*, 533 U.S. at 689–90, 692, 699).

The Government has detained Petitioner, without any charged crime, for more than 25 months—*over two years and counting*. His detention exceeds the presumptively reasonable six-month period the *Zadvydas* Court established under 8 U.S.C. § 1231(a)(6). A review of the available case law indicates that Petitioner has been detained with a viable *Zadvydas* claim longer than any other petitioner—ever. Meanwhile, the Immigration Judge presiding over Petitioner's

claims has already granted a stay of removal to one of Petitioner's co-petitioners on substantially similar facts. *See* discussion *supra* note 3.

In addition to the Sixth Circuit's stay of Petitioner's removal on February 19, 2021, ICE has detained Petitioner without the whisper of a possible removal date. That is confusing, as "[t]he pandemic's impact on travel to Iraq seems to have abated." *Toma v. Adducci*, 535 F. Supp. 3d 651, 659 (E.D. Mich. 2021); *see also* U.S. Embassy & Consulates in Iraq, *COVID-19 Information* (Jan. 9, 2022), https://iq.usembassy.gov/covid-19-information [https://perma.cc/K5T2-LFP9] ("National airports are open. . . . Entry and exit requirements are subject to change on short notice."). Yet there are substantial bars to scheduling Petitioner's deportation to Iraq, including the political turmoil that remains today. *See* Shawn Yuan, *Iraq Faces Growing Violence as Political Rift Deepens*, AL JAZEERA (Jan. 18, 2022), https://www.aljazeera.com/news/2022/1/18/iraq-faces-growing-violence-as-political-rift-deepens [https://perma.cc/KD7L-CHCY].

Moreover, the Government has not even attempted to address the likelihood of Petitioner's removal in the reasonably foreseeable future. *See generally* ECF Nos. 5; 11. Indeed, the Government has yet to identify any particularized evidence of Petitioner's potential removal. Rather, the Government attempts to turn the *Zadvydas* inquiry on its head by arguing that "Petitioner foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should* be removed." ECF No. 11 at PageID.393 (emphases in original). On the contrary, Judge Paruch determined that Petitioner *should* be removed nearly seven years ago, on March 24, 2015. Furthermore, the Government has made no attempt to demonstrate that the political turmoil in Iraq has diminished or that Petitioner now faces a lower risk of torture or death in Iraq than before. Nor has the Government shown an attempt to obtain another *laissez-passer*.

- 19 -

Meanwhile, ICE has conceded that Petitioner is "at heightened risk of severe illness and death upon contracting the COVID-19 virus" due to his acute asthma. ECF No. 1-7 at PageID.66.

In other words, Petitioner's detention is presumptively unreasonable, his removal is unforeseeable, and the Government has chosen not to proffer even a remote timeframe within which he will be removed. The Government might deport Petitioner in the future, but based on the record before this Court, it has no plans to do so anytime soon.

According to *Zadvydas v. Davis,* 533 U.S. 678 (2001), Petitioner's continued detention without any reasonable prospect of removal in the foreseeable future violates his right from unreasonable detention under the Fifth Amendment's Due Process Clause. *Toma v. Adducci*, 535 F. Supp. 3d at 659. Moreover, uncharged with a crime, "his imprisonment is [in]fertile." *See* THE DIARY AND SUNDRY OBSERVATIONS OF THOMAS ALVA EDISON 156 (Dagobert D. Runes ed., 1948). Therefore, he is being held "in custody in violation of the Constitution" of the United States of America. 28 U.S.C. § 2241(c)(3).

As he pleaded, "[t]his petition for a writ of *habeas corpus* is now his last resort to be released from detention." ECF No. 1 at PageID.15. According to Supreme Court precedent, the Government must release him.

## V.

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **CONDITIONALLY GRANTED**. *See, e.g.*, *Toma v. Adducci*, 535 F. Supp. 3d 651, 659 (E.D. Mich. 2021); *Danesh v. Jenifer*, No. 00-CV-74409-DT, 2001 WL 558233, at *8 (E.D. Mich. Mar. 27, 2001); *Baidas v. Jennings*, 123 F. Supp. 2d 1052, 1061 (E.D. Mich. 1999); *see also Garcia Diaz v. Acuff*, 507 F. Supp. 3d 991, 995 (S.D. Ill. 2020), *appeal dismissed sub nom. Diaz v. Acuff*, No. 21-1269, 2021 WL 3629320 (7th Cir. Apr. 23, 2021); *Knox v. Acuff*, No. 20-CV-822-NJR,

2020 WL 5893521 (S.D. Ill. Oct. 5, 2020); *Ruderman v. Kolitwenzew*, 459 F. Supp. 3d 1121, 1133

(C.D. Ill. 2020), *appeal dismissed*, No. 20-2312, 2020 WL 8184876 (7th Cir. Oct. 2, 2020); *cf.*

*Zaya v. Adducci*, No. 20-10921, 2020 WL 1903172 (E.D. Mich. Apr. 18, 2020).

Further, it is **ORDERED** that Petitioner is **DIRECTED** to comply with the following

conditions:

> 1. Petitioner will reside at one residence, will provide his address and telephone number to the Government, and will quarantine at the residence for at least the first 14 days of his release, meaning *he may not leave the house for 14 days*;
> 2. Petitioner will comply with all national, state, and local guidance regarding staying at home, sheltering in place, and social distancing;
> 3. Petitioner shall not violate any federal, state, or local laws or regulations;
> 4. The Government may take Petitioner back into custody if he violates the terms of his release; violates any federal, state, or local law or regulation; or commits *any crime*;
> 5. This Court may revoke Petitioner's release and order him re-detained if he fails to comply with this Order of Release or with any condition of release set by the Department of Homeland Security (DHS), Immigration and Customs Enforcement ("ICE"), or this Court; and
> 6. As able, Petitioner must read these conditions aloud to his attorney and his wife.

Further, it is **ORDERED** that the Government is **DIRECTED** to coordinate with all the

appropriate agencies and **release Petitioner in 30 days**, subject to supervision under the

regulations prescribed by the Attorney General under 8 U.S.C. § 1231(a)(3).

Further, it is **ORDERED** that the Government is **DIRECTED** to transport Petitioner from

St. Claire County Detention Facility to the house where he will reside in Michigan.

Further, it is **ORDERED** that Petitioner's Motion for a Preliminary Injunction, ECF No.

2, is **DENIED AS MOOT**.

Further, it is **ORDERED** that the Clerk of the Court is **DIRECTED** to change the caption

of this case to read "Ali Al-Sadoon, Petitioner v. Robert K. Lynch, Jr., Tae D. Johnson, Alejandro

Mayorkas, Merrick B. Garland, and Mat King, Respondents." Fᴇᴅ. R. Cɪᴠ. P. 25(d).

Dated: February 17, 2022                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge